IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SID BERNSTEIN PRESENTS, LLC, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) No. _____ |
| APPLE CORPS LIMITED and SUBAFILMS LIMITED, | ) ) ) JURY TRIAL DEMANDED ON ALL ) ISSUES TRIABLE TO A JURY |
| Defendants. | ) ) |

# COMPLAINT

Plaintiff Sid Bernstein Presents, LLC ("SBP" or "Plaintiff"), by and through its undersigned counsel, as and for its complaint against defendants Apple Corps Limited ("Apple Corps"), and Subafilms Limited ("Subafilms"), alleges as follows:

## THE PARTIES

1. Plaintiff Sid Bernstein Presents, LLC is a limited liability corporation organized and existing under the laws of New York and having its principal place of business in Brooklyn, New York.

2. Defendant Apple Corps is a company having its principal place of business at 27 Ovington Square, London SW3 1LJ, England. Apple Corps was founded by members of the Beatles, and is in the music and entertainment business.

3. Defendant Subafilms is a subsidiary of Apple Corps and has its principal place of business at 27 Ovington Square, London SW3 1LJ, England.

## JURISDICTION AND VENUE

4. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and for copyright infringement in violation of the copyright laws of the United States, 17 U.S.C. §101 et seq., including 17 U.S.C. § 411(a).

5.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

7.     This Court has personal jurisdiction over the Defendants pursuant to New York C.P.L.R. §§ 302(a) and/or 301.

## STATEMENT OF FACTS

8.     Plaintiff SBP is the owner by assignment made in 2012 by Sidney Bernstein ("Sid Bernstein" or "Sid") of all of his intellectual property rights, including copyrights, including the right to sue for past, present and future infringements thereof.

9.     Sid Bernstein was a well known and highly successful promoter and producer of performances by many rock groups, musicians and performers, including the Beatles, the Rolling Stones, the Rascals, Herman's Hermits, Tony Bennett, Ella Fitzgerald, James Brown and others. Sid began his career in about 1951 and passed in 2013 at the age of 95.

10.     Sid is best known as "The Man Who Brought the Beatles to America" in 1964. Sid had heard about the British rock group, which at the time was not well know in America. Sid contacted the Beatles' manager, Brian Epstein, and proposed that he, Sid, would promote and put on performances by the Beatles in America. Mr. Epstein agreed to Sid's proposal. Sid was influential in getting the Beatles booked for their historic appearance in America on the highly popular Ed Sullivan television show, and produced their performance at Carnegie Hall, both of which occurred in February 1964.

### The 1965 Shea Stadium Performance by the Beatles and Creation of the Master Tapes

11.     After the highly successful performances by the Beatles on the Ed Sullivan Show and at Carnegie Hall, Sid had the idea of putting on a performance by the Beatles at Shea Stadium. No rock group had ever performed in such a large venue. Sid proposed his idea to Mr. Epstein, and in April 1965 they entered into a contract whereby Sid hired the Beatles

2

and a complete supporting show to perform at a concert to be presented by Sid at Shea Stadium on August 15, 1965.  The contract provided that Sid would guarantee paying the Beatles a minimum fee regardless of how many tickets were sold, plus a percentage of gross box office receipts over a stipulated amount.  The contract also provided that Mr. Epstein's company, Nems Enterprises, Ltd. ("Nems"), had the right to film and record the performances of the Beatles and supporting acts during the concert.

12. Sid set to work raising the money to mount the performance, which included, among other things, renting Shea Stadium, building a stage, hiring security, hiring the opening acts, and paying the Beatles their minimum performance fee.  Sid told people that he was planning a performance by the Beatles at Shea Stadium and the word spread like wildfire.  Thousands of envelopes containing money and requests for tickets were sent to Sid's Post Office Box in New York.  At the end of the day, Sid had received more than enough money from New Yorkers to sell out every one of the approximately 55,000 seats in Shea Stadium.

13. Sid in fact did pay the minimum fee and additional amounts agreed to with Mr. Epstein for the entire show, including the performances of the Beatles and the opening acts.

14. Sid arranged for Ed Sullivan to introduce the Beatles at the Shea Stadium performance, and Mr. Epstein arranged for Mr. Sullivan's camera crew to film and record the planned performance.  Sid knew of and approved the filming and recording of the performance by Mr. Sullivan's crew.

15. The Shea Stadium performance occurred on August 15, 1965.  In addition to having the original idea for and proposing that he present the Beatles' performance at Shea Stadium, Sid planned, managed and paid for virtually every aspect of the production, including deciding on, booking and paying to rent Shea Stadium; paying the Beatles and other artists to perform; arranging and paying for security and insurance; deciding on the location, and placement of the stage within Shea Stadium; determining the placement, orientation and arrangement of the band members and microphones; deciding on and coordinating the introduction of the Beatles by Ed Sullivan; deciding on and arranging for the Beatles to enter

Shea Stadium by helicopter; deciding on and coordinating the Beatles' entrance to the stage from the dugout and their exit from the stadium by limousine; and paying for the helicopter and limousine.  Also, Sid designed the tickets that were sold for the Shea Stadium performance, and had a poster made to promote the Beatles' Shea performance along with performances he planned to put on by other acts, including Herman's Hermits, The Dave Clark 5, The Kinks, the Moody Blues, Chuck Berry and Johnny Cash.  The tickets explicitly stated "Sid Bernstein Presents" above a picture of the Beatles, and the poster explicitly stated "Sid Bernstein Presents … the Beatles Sunday, August 15th 8:00 P.M. Shea Stadium" as well as "Sid Bernstein Presents" the other acts' performances at other venues on other dates.

16.     Sid attended the Shea performance on August 15, 1965 to supervise the production.  After the opening acts performed, Sid introduced Ed Sullivan to the audience, who then introduced the Beatles, saying: "Thank you very much, Sid.  Now ladies and gentlemen, honored by their country, decorated by their Queen, and loved here in America, here are the Beatles!"  Sid observed the filming and recording of the entire production, i.e., the creation of the "Master Tapes" of the production, including the performances by the Beatles and the opening acts.

17.     Mr. Epstein's involvement in the performance was limited to supplying the services of the Beatles and the opening acts to perform at the concert for Sid, and hiring Ed Sullivan's crew to film and audiorecord the performance.  Mr. Sullivan's involvement in the performance consisted of him reciting the single sentence noted above introducing the Beatles. Neither Mr. Epstein, nor Nems, nor Mr. Sullivan or his production company, were recognized in any public manner as arranging, producing, promoting, or presenting the performance.

### The Creation and Broadcast of the Movie

18.     Upon information and belief, Nems obtained custody of the Master Tapes at some time after the Shea Stadium performance.  Also, on a date unknown to Plaintiff after the Shea Stadium performance, and without seeking Sid's consent, Mr. Epstein/Nems and Sullivan

Productions used the Master Tapes of the Shea Stadium performance to produce a movie of the performance entitled "The Beatles at Shea Stadium" (the "Movie").

19. Upon information and belief, Mr. Epstein/Nems and/or Mr. Sullivan/Sullivan Productions arranged for the Movie to air on the ABC television network. In January 1967, the Movie was broadcast nationwide on ABC.

20. United States Copyright Office records indicate that Nems purportedly acquired all right, title and interest, including copyright, in the Movie pursuant to an agreement made in August 1965 between Nems and Sullivan Productions, Inc..

21. United States Copyright Office records indicate that in 1988, Subafilms received a registration for its claim of ownership of the copyrights in the Movie, which it purportedly obtained by assignment of all rights in the Movie by the named author, "Nems Enterprises Ltd. as employer for hire."

### Defendants' Commercialization of the Master Tapes and the Movie

22. In or about 1995, Apple Corps and/or Subafilms arranged for and authorized the television broadcast in the United States, including New York, of a documentary series on the Beatles' career called *The Beatles Anthology* ("Anthology"). That broadcast occurred in November 1995 on the ABC television network.

23. In 1996, Apple Corps and/or Subafilms arranged for and authorized the release, distribution, offer for sale and sale in the United States of the Anthology series on VHS and Laserdisc.

24. In 1995 and 1996, Apple Corps and/orSubafilms arranged for and authorized the release, distribution, offer for sale and sale in the United States of Anthology CDs.

25. In 2003, Apple Corps and/or Subafilms arranged for and authorized the release, distribution, offer for sale and sale in the United States of the Anthology series on DVD.

26. These Anthology DVDs, Laserdiscs and VHS cassettes included audiovisual footage from the Master Tapes and/or the Movie, and Anthology CDs included the

audio recording from the Master Tapes of the Beatles' 1965 Shea Stadium performance of the song "Everybody's Trying To Be My Baby" (CD Set 2, Track 13).  On information and belief, such DVDs, Laserdiscs, VHS cassettes and CDs were offered for sale and sold to purchasers in the United States, including in New York.

27. Apple Corps and/or Subafilms have continued to distribute and sell Anthology products containing footage from the Master Tapes and/or the Movie and Anthology CDs containing a song from the Shea Stadium performance.  Anthology DVDs and CDs are available for purchase, for example, via the beatles.com website, which is registered to Apple Corps, as well as on Amazon and eBay.  Upon information and belief, Apple and/or Subafilms contracted with Amazon and eBay to offer for sale and sell such products in the United States, including New York.  Upon information and belief, such products have been purchased in the United States and in New York via the beatles.com website, Amazon and eBay.

28. In or about 2010, Maritime Pictures LLC began showing a film entitled *The Last Play at Shea*, which documents Billy Joel's 2008 concerts of the same name that occurred at Shea Stadium, and which were the last performances to play the historic stadium before it was demolished to be replaced by Citifield.  The film included footage from the Master Tapes and/or the Movie.  The film credits Apple Corps for supplying the footage from the 1965 Shea Stadium performance.  Upon information and belief, Apple Corps and/or Subafilms contracted with Maritime to provide a copy of that footage to Maritime.

29. At a time unknown to Plaintiff, Apple Corps and/or Subafilms authorized and began offering streaming from the beatles.com website over the Internet of footage from the Master Tapes and/or the Movie.  Upon information and belief, such streaming has occurred to persons within the United States, including New York.

30. In 2015, Plaintiff SBP learned that Subafilms had registered a copyright claim in the Movie, and that Subafilms claimed to own the copyrights in the Movie by assignment from Nems.

31. In 2016, SBP learned that the television broadcast of the Anthology series as well as Anthology DVDs, Laserdiscs and VHS cassettes included footage from the 1965 Shea Stadium performance.

32. In 2016, SBP learned that Anthology CDs included the audio recording from the Beatles' performance of the song "Everybody's Trying To Be My Baby" at the 1965 Shea Stadium performance.

33. In 2015, SBP learned that the beatles.com website offered and provided streaming of footage and audio recording material from the 1965 Shea Stadium performance.

34. In 2015, SBP learned that Maritime's film *The Last Play at Shea* included footage from the 1965 Shea Stadium performance, and that Apple Corps had given Maritime access to that footage.

35. On July 28, 2016, Apple Corps announced that the film *Eight Days a Week: The Touring Years* relating to the Beatles' live performances will be released on September 16, 2016. (See http://www.billboard.com/articles/columns/rock/7453637/beatles-shea-stadium-concert-theaters-doc-trailer-video.) On July 29, 2016, Apple Corps announced in a full page ad in The New York Times that after the *Eight Days a Week* film it will include an exclusive in-theatre only 30 minute film of the concert of the 1965 Beatles' performance at Shea Stadium, digitally restored with remastered sound (the "Remastered Film"). On information and belief, Apple Corps also plans to distribute the Remastered Film via a streaming service. On information and belief, the Remastered Film uses footage and audio recording material from the Master Tapes and/or the Movie.

36. In July 2016, SBP submitted an application to register its ownership of copyrights in the Master Tapes of the 1965 Shea Stadium performance based on the assignment of Sid Bernstein's rights therein as the dominant and hence sole author of the copyrightable work embodied therein. Because neither Sid nor SBP ever had access to the Master Tapes, SBP's accompanying deposit copy consisted of photo frames from the Movie, which itself had been made from footage in the Master Tapes.

37. The Copyright Office refused SBP's application for registration on the ground that in an "adverse" situation the Copyright Office cannot accept a copy of the "infringing" work as deposit material. As applied to SBP's application, the Copyright Office indicated that SBP's claim of copyright in the Master Tapes was adverse to the 1988 registration of copyright by Subafilms in the Movie, which SBP considers an unauthorized derivative work of the Master Tapes; and because SBP did not have direct access to the original Master Tapes and its deposit copy included photo frames from the Movie, which the Copyright Office said represented the "infringing" work, the Copyright Office refused registration.

38. Although the Copyright Office refused SBP's application for registration, SBP asserts claims for infringement pursuant to 17 U.S.C. § 411(a), and complied with the requirements of Section 411(a) as a predicate to bringing suit. Section 411(a) provides that "where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights." The Copyright Office refused registration on the basis noted above concerning the deposit copy. However, SBP's deposit copy complied with 37 C.F.R. § 202.21(g)(1)(ii), which permits the deposit of "identifying material" from the work, consisting of "one frame enlargement or similar visual reproduction from each 10-minute segment of the motion picture, and a description of the motion picture." SBP's application informed the Copyright Office that SBP did not have access to the original Master Tapes and that its deposit copy consisted of frames from the Movie that were derived from the Master Tapes. The Copyright Office's refusal to register SBP's claim on the ground that the deposit copy was not made directly from the original footage of the Master Tapes is contrary to case law saying that a copy that is made from a bona fide copy of the original work satisfies the deposit requirement.

39. SBP gave notice to Apple Corps and Subafilms that SBP believed that Sid Bernstein was the dominant, and hence the sole, author of the underlying work embodied in the Master Tapes and sole owner of copyright therein, and that the Movie, the Remastered Film, and

any other prior use by Defendants of video footage and audio recording material from the Master Tapes and/or the Movie, whether presently known or unknown to Plaintiff, infringed SBP's rights, and that any unauthorized future use would constitute infringement. SBP proposed that the parties explore a possible resolution of these issues without engaging in litigation. Apple disputed SBP's position, asserting that it owned all copyrights in the Master Tapes and the Movie, and declined SBP's request that the parties attempt to resolve the issues amicably.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment re Rights in Master Tapes)

40. SBP hereby incorporates paragraphs 1 through 39 above as if fully set forth herein.

41. By reason of being the producer of and having made creative contributions to the 1965 Shea Stadium performance, as well as being the employer for hire of the Beatles and the opening acts, who performed at his instance and expense, Sid Bernstein was the dominant, and hence sole, author of the copyrightable work embodied in the Master Tapes, and the sole owner of all exclusive rights therein.

42. As the assignee of Sid Bernstein's rights in the Master Tapes, SBP is the sole owner of all copyrights therein.

43. There is a real, immediate and substantial controversy between Plaintiff SBP and Defendants Apple Corps and/or Subafilms concerning the parties' rights in the Master Tapes.

44. Plaintiff SBP is entitled to a declaratory judgment that Sid Bernstein was the dominant and sole author of the copyrightable work embodied in the Master Tapes, and that SBP is the sole owner by assignment of all copyrights therein.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment re Rights in Movie)

45. SBP hereby incorporates paragraphs 1 through 44 above as if fully set forth herein.

46. The making of the Movie by Nems and Sullivan Productions was not authorized by Sid Bernstein, and constituted the creation of an infringing derivative work of the underlying work embodied in the Master Tapes.

47. The 1988 registration obtained by Subafilms of copyright in the Movie is therefore invalid.

48. By reason of being the sole owner of copyrights in the underlying work embodied in the Master Tapes, with the exclusive right to make derivative works thereof, Sid Bernstein owned the copyrights in all portions of the Movie that were derived from the Master Tapes.

49. Because the underlying work embodied in the Master Tapes pervades the entire Movie, Nems had no copyright in any portion of the Movie, and Sid Bernstein was the sole owner of copyright in the Movie.

50. Nems and Sullivan Productions infringed Sid Bernstein's rights in the Master Tapes and the Movie by airing the Movie on ABC.

51. There is a real, immediate and substantial controversy between Plaintiff SBP and Defendants Apple Corps and/or Subafilms concerning the parties' rights in the Movie.

52. Plaintiff SBP is entitled to a declaratory judgment that Sid Bernstein was the sole owner of copyright in the Movie as being an unauthorized derivative work in which the underlying work embodied in the Master Tapes pervades the entire Movie, and that SBP is the sole owner by assignment of copyright in the Movie.

53. In the alternative, if the Court determines that Sid Bernstein's copyright ownership rights in the Movie extended only to the portions of the Movie that were derived from

the Master Tapes, Plaintiff SBP is entitled to a declaratory judgment that SBP is the owner of such rights by assignment from Sid Bernstein.

54. Plaintiff SBP is entitled to a declaratory judgment that the unauthorized making and airing of the Movie infringed Sid Bernstein's rights in the Master Tapes and in the Movie.

55. Plaintiff SBP is entitled to a declaratory judgment that the 1988 registration obtained by Subafilms is invalid.

### THIRD CLAIM FOR RELIEF

**(Declaratory Judgment re Rights in Remastered Film)**

56. SBP hereby incorporates paragraphs 1 through 55 above as if fully set forth herein.

57. The making of the Remastered Film by Apple Corps and/or Subafilms was not authorized by SBP, and constituted the creation of an infringing derivative work of the underlying work embodied in the Master Tapes and/or the Movie.

58. As the assignee of Sid Bernstein, who was the sole author of the underlying work embodied in the Master Tapes and sole owner of copyrights therein with the exclusive right to make derivative works thereof, Plaintiff owns the copyrights in all portions of the Remastered Film that were derived from the Master Tapes and/or the Movie.

59. There is a real, immediate and substantial controversy between Plaintiff SBP and Defendants Apple Corps and/or Subafilms concerning the parties' rights in the Remastered Film.

60. Plaintiff SBP is entitled to a declaratory judgment that the Remastered Film is an infringing derivative work and that SBP is the owner of copyright in all portions of the Remastered Film that were derived from the Master Tapes and/or the Movie.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment re: *The Last Play at Shea*)

61. SBP hereby incorporates paragraphs 1 through 60 above as if fully set forth herein.

62. There is a real, immediate and substantial controversy between Plaintiff SBP and Defendants Apple Corps and/or Subafilms concerning the parties' rights in the the Master Tapes and the Movie.

63. By providing Maritime with footage from the Master Tapes and/or the Movie for inclusion in the movie *The Last Play at Shea*, Defendants Apple Corps and/or Subafilms infringed Sid Bernstein's and/or SBP's rights in the Master Tapes and/or the Movie.

64. Plaintiff SBP is entitled to a declaratory judgment that such actions constituted infringement.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Judgment re: Registration of Copyright in Master Tapes)

65. SBP hereby incorporates paragraphs 1 through 64 above as if fully set forth herein.

66. There is a real, immediate and substantial controversy concerning whether the Copyright Office's refusal to register SBP's claim of copyright in the Master Tapes on the ground relied on by the Copyright Office was correct.

67. Plaintiff SBP is entitled to a declaratory judgment that the deposit copy it submitted with its application to register copyright in the Master Tapes was proper, that registration should not have been refused, and that SBP is entitled to register its claim thereto.

## SIXTH CLAIM FOR RELIEF

### (Copyright Infringement by Apple Corps and/or Subafilms: Anthology Broadcast)

68. SBP hereby incorporates paragraphs 1 through 67 above as if fully set forth herein.

69. Defendants Apple Corps and/or Subafilms infringed Sid Bernstein's copyrights in the Master Tapes and/or the Movie by broadcasting footage of the 1965 Shea Stadium performance from the Master Tapes and/or the Movie on television in the Anthology series.

70. This infringement by Defendants Apple Corps and/or Subafilms has caused injury to Plaintiff.

## SEVENTH CLAIM FOR RELIEF

### (Copyright Infringement by Apple Corps and/or Subafilms: Anthology DVDs)

71. SBP hereby incorporates paragraphs 1 through 70 above as if fully set forth herein.

72. The offering for sale, sale, reproduction and distribution in the United States by Defendants Apple Corps and/or Subafilms and/or their distributors or agents of Anthology DVDs, Laserdiscs and VHS cassettes containing footage from the Master Tapes and/or the Movie infringed Sid Bernstein's and/or SBP's copyrights in the Master Tapes and/or in the Movie.

73. The continued engagement in such actions by Defendants Apple Corps and/or Subafilms and/or their distributors or agents after being given notice by SBP that such acts infringe SBP's rights constitutes willful infringement.

74. These acts of infringement by Defendants Apple Corps and/or Subafilms have caused injury to Plaintiff.

## EIGHTH CLAIM FOR RELIEF

### (Copyright Infringement by Apple Corps and/or Subafilms: Anthology CDs)

75. SBP hereby incorporates paragraphs 1 through 74 above as if fully set forth herein.

76. The offering for sale, sale, reproduction and distribution in the United States by Defendants Apple Corps and/or Subafilms and/or their distributors or agents of

Anthology CDs containing the Beatles' audio recording from the Master Tapes and/or the Movie of the song "Everybody's Trying To Be My Baby" infringed Sid Bernstein's and/or SBP's copyrights in the Master Tapes and/or in the Movie.

77. The continued engagement in such actions by Defendants Apple Corps and/or Subafilms and/or their distributors or agents after being given notice by SBP that such acts infringe SBP's rights constitutes willful infringement.

78. These acts of infringement by Defendants Apple Corps and/or Subafilms have caused injury to Plaintiff.

## NINTH CLAIM FOR RELIEF

**(Copyright Infringement by Apple Corps and/or Subafilms: *The Last Play at Shea*)**

79. SBP hereby incorporates paragraphs 1 through 78 above as if fully set forth herein.

80. By providing Maritime with footage from the Master Tapes and/or the Movie for inclusion in the movie *The Last Play at Shea*, Defendants Apple Corps and/or Subafilms infringed Sid Bernstein's and/or SBP's rights in the Master Tapes and/or the Movie.

81. This infringement by Defendants Apple Corps and/or Subafilms has caused injury to Plaintiff.

## TENTH CLAIM FOR RELIEF

**(Copyright Infringement by Apple Corps and/or Subafilms: beatles.com)**

82. SBP hereby incorporates paragraphs 1 through 81 above as if fully set forth herein.

83. The distribution in the United States via streaming from the beatles.com website by Defendants Apple Corps and/or Subafilms of footage from the Master Tapes and/or the Movie infringed Sid Bernstein's and/or SBP's rights in the Master Tapes and/or in the Movie.

84. The continued engagement in such actions by Defendants Apple Corps and/or Subafilms after being given notice by SBP that such acts infringe SBP's rights constitutes willful infringement.

85. These acts of infringement by Defendants Apple Corps and/or Subafilms have caused injury to Plaintiff.

### ELEVENTH CLAIM FOR RELIEF

**(Copyright Infringement by Apple Corps and/or Subafilms: Remastered Film)**

86. SBP hereby incorporates paragraphs 1 through 85 above as if fully set forth herein.

87. The unauthorized making and any reproduction, distribution and showing by Apple Corps and/or Subafilms of the Remastered Film of the concert of the 1965 Beatles' performance at Shea Stadium infringed and/or will infringe Plaintiff's copyrights in those works.

88. The engagement in any such acts by Defendants after being given notice that such acts infringe or will infringe SBP's rights constitutes willful infringement.

89. Plaintiff is entitled to an injunction preventing the reproduction, distribution and showing of the Remastered Film.

90. These acts of infringement by Defendants Apple Corps and/or Subafilms have caused injury to Plaintiff.

### TWELFTH CLAIM FOR RELIEF

**(Alternative Declaratory Judgment of Joint Authorship in Master Tapes)**

91. SBP hereby incorporates paragraphs 1 through 90 above as if fully set forth herein.

92. If the Court were to determine that Sid Bernstein was not the sole author of the underlying work embodied in the Master Tapes, then SBP is entitled in the alternative to a declaratory judgment that Sid Bernstein was a joint author thereof with Nems, and a joint owner

of the copyright therein, and that SBP is a joint owner of such copyright by assignment from Sid Bernstein.

93. As set forth in paragraphs 11-16 above, Sid Bernstein made independent copyrightable contributions to the work embodied in the Master Tapes.

94. As set forth in paragraphs 11 and 13 above, Sid Bernstein was the employer for hire of the Beatles and the opening acts, who performed at his instance and expense, and the copyrightable contributions of the Beatles and the opening acts vested in him.

95. The factual indicia of ownership and authorship set forth in paragraphs 11-16 above also show that Sid Bernstein intended to be an author of the copyrightable work embodied in the Master Tapes.

96. As set forth in paragraphs 14 and 16 above, Sid Bernstein was aware of and approved the filming and audio recording of the 1965 Shea Stadium performance by Ed Sullivan's crew.  Sid Bernstein knew and intended that his contributions to the performance would be merged with the contemporaneous film and audio recording of the performance being made by Mr. Sullivan's crew as inseparable and interdependent parts of a unitary whole in the form of the Master Tapes, and thereby intended to be a joint author of the copyrightable work embodied in the Master Tapes.

97. On information and belief, Nems knew and intended that its video and audio recording of the performance would be merged with the Shea Stadium performance of the Beatles and the opening acts as inseparable and interdependent parts of a unitary whole in the form of the Master Tapes, and thereby intended to be a joint author with Sid Bernstein of the copyrightable work embodied in the Master Tapes.

98. There is a real, immediate and substantial controversy between Plaintiff SBP and Defendants Apple Corps and/or Subafilms concerning the parties' rights in the Master Tapes.

99. If the Court were to determine that Sid Bernstein was a joint author of the work embodied in the Master Tapes, then Plaintiff SBP is entitlted to an accounting of its share

of the profits made by Defendants Apple Corps and/or Subafilms from any use or licensing of the work, any portion thereof, and any derivative works thereof.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for Plaintiff and against Defendants:

A. Declaring that Sid Bernstein was the dominant and sole author of the copyrightable work embodied in the Master Tapes and sole owner of copyright therein, and that SBP is the sole owner by assignment of all copyrights in the Master Tapes;

B. Declaring that Sid Bernstein was the owner of all copyrights in the Movie as being an unauthorized derivative work in which the underlying work embodied in the Master Tapes pervades the entire Movie, and that SBP is the sole owner by assignment of all copyrights in the Movie;

C. In the alternative, if the Court determines that Sid Bernstein's copyright ownership rights in the Movie extended only to the portions of the Movie that were derived from the Master Tapes, declaring that SBP is the owner of such rights by assignment from Sid Bernstein;

D. Declaring that the unauthorized making and airing of the Movie infringed Sid Bernstein's rights in the Master Tapes and in the Movie;

E. Declaring that the 1988 registration obtained by Subafilms is invalid;

F. Declaring that Plaintiff SBP is the owner of copyrights in all portions of the Remastered Film that were derived from the Master Tapes and/or the Movie;

G. Declaring that Defendants' providing of footage from the Shea Stadium Master Tapes to Maritime for use in the film *The Last Play at Shea* infringed Plaintiff's copyrights;

H. Declaring that the deposit copy Plaintiff SBP submitted with its application to register copyright in the Master Tapes was proper, that registration should not

have been refused, and ordering that SBP's application for registration should be granted and be deemed effective as of the date that the Copyright Office refused registration;

      I.     If the Court were to determine that Sid Bernstein was not the sole author of the copyrightable work embodied in the Master Tapes, then in the alternative declaring that Sid Bernstein was a joint author thereof with Nems, and a joint owner of the copyrights therein, and that SBP is a joint owner of such copyrights by assignment from Sid Bernstein;

      J.     Finding that Defendants have infringed Plaintiff's exclusive rights in the Master Tapes under Section 106 of the Copyright Act, by making and/or reproducing, airing, distributing, offering for sale, selling, or performing publicly, footage and audio recording materials from the Master Tapes;

      K.     Permanently enjoining Defendants, pursuant to Section 502 of the Copyright Act, from infringing Plaintiff's copyrights in the Master Tapes, the Movie and the Remastered Film by, *inter alia*, reproducing, preparing derivative works of, distributing, performing publicly, and/or displaying images of, the Master Tapes, the Movie and the Remastered Film, or portions thereof;

      L.     Ordering, pursuant to Section 503 of the Copyright Act, the impounding of and transfer to Plaintiff of: the Master Tapes, the Movie and the Remastered Film and any portions thereof, and all copies or derivative works thereof, made or used by Defendants or their distributors or agents; all plates, masters, tapes, film negatives or other articles by means of which such copies may be reproduced; and all records documenting the manufacture, sale or receipt of things involved in all infringements by Defendants;

      M.     Awarding Plaintiff, pursuant to Section 504 of the Copyright Act, damages and Defendants' profits attributable to their infringements, or alternatively, at Plaintiff's election, statutory damages;

      N.     Awarding Plaintiff, pursuant to Section 505 of the Copyright Act, its costs and attorneys' fees;

O. In the event the Court determines that Sid Bernstein is a joint author of the copyrightable work embodied in the Master Tapes, awarding Plaintiff its share of the profits made by Defendants Apple and/or Subafilms from any use or licensing of that work and any derivative works thereof; and

P. Granting Plaintiff such other and further relief as the Court may deem just and proper.

Date: September 12, 2016

CURRY LAW FIRM PLLC

By
    /s/ *Donald J. Curry*
Donald J. Curry

1 Rockefeller Plaza, 11th Floor
New York, NY  10020
(646) 756-2894
djcurry@currypllc.com

*Attorney for Plaintiff Sid Bernstein Presents, LLC*